## Case No. 4,549.

EUREKA CONSOL. MIN. CO. v. RICH-
MOND MIN. CO.

[5 Sawy. 121.] [1]

Circuit Court, D. Nevada. March 22, 1878.

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

J. J. Williams and Crittenden Thornton, for the motion.

S. Heydenfeldt, John Garber, and H. I. Thornton, opposed.

SAWYER, Circuit Judge. We will consider the equity case first. In this suit, upon the final hearing, the preliminary injunction was dissolved, and the cross-bill of the Richmond Company dismissed absolutely without limitation or qualification, the decree enrolled, and the term adjourned. An appeal to the supreme court was taken in proper time and form, to operate as a supersedeas; but there was nothing to supersede except the decree for costs. The court granted no affirmative relief on the cross-bill. It simply denied the relief asked by the Richmond Company, and dismissed the bill out of court. The Eureka Company was not doing anything under or by virtue of the decree. It was not proceeding to collect the costs, either by execution or otherwise. The case was ended in this court, the jurisdiction exhausted, and the term adjourned. There was no longer any case pending in the court in which any order could be made. The court, therefore, has no further jurisdiction in the case except to execute the decree for costs when the supersedeas is removed, if it should be removed, or till the decree is reversed on appeal to the supreme court, and the cause thereby re-opened upon the receipt of the mandate from the appellate court. To issue a restraining order, would be to exercise a new original jurisdiction without any suit pending in which it could be issued. The cases of Galloway v. Mayor, etc., of London, 3 De Gex, J. & S. 60, and Coleman v. Hudson River Bridge Co. [No. 2,983], are in point. The former case was a bill to restrain the corporation of London from taking certain property under statutory powers. The master of the rolls dismissed the bill, and the order of dismissal was affirmed on appeal, the lords justices differing in opinion. An appeal having been taken to the house of lords, it being probable that the corporation would take the property, and pull down the building pending the appeal, the appellant applied to the lords justices for an injunction to restrain the corporation from proceeding till the appeal could be heard. Although the lords justices expressed themselves as being as willing as they ought to be to grant the injunction, it was denied on the ground that their jurisdiction was gone on the dismissal of the bill. Lord Justice Turner said: "I cannot but think that by reason of the dismissal of the bill, the power of the court is gone. I think that the plaintiff, if he intended to appeal to the house of lords, ought, at the hearing, to have asked the court so to frame its order as to keep alive its jurisdiction pending the appeal."

In Coleman v. Hudson River Bridge Co. [supra] the judges of the circuit court not agreeing, certified a division of opinion to the supreme court. The justices of the supreme court were also equally divided in opinion on the questions certified. The consequence was a dismissal of the certificate of division by the supreme court. In the opinion dismissing the certificate, the court suggest that the bill must be dismissed, and that the complainant could then appeal from the decree dismissing the bill. The defendant filed the mandate and moved to dismiss the bill; whereupon, the complainant's counsel asked the court to so modify the decree of dismissal as to retain the provisional injunction until the decision of the supreme court on appeal from the decree of dismissal. It was argued that the injunction did not necessarily fall with a dismissal of the bill; or, if it did, prima facie, that it was in the power of the court to continue the injunction till the decision of the appeal. Mr. Justice Nelson, in delivering the opinion of the court, says: "The court cannot agree with either of these positions. The legal result of the division of opinion of the judges is a dismissal of the bill, without any qualification. Indeed, the condition of the court renders any qualification or modification of the dismissal impracticable. The case is out of court, so far as it respects any proceedings, except an appeal to review the decree. The judges are disabled, from a contrariety of opinion, to annex any condition, and it certainly requires no argument to show that in case of an unqualified dismissal of a bill, all incidents fall with it. We agree that the chancellor may, in his discretion, direct a modified dismissal, and thereby annex to it such conditions as may seem to him just and equitable. Having the possession and entire control of the cause, this qualified exercise of power is practicable. But such a case is very different from this one, where the dismissal is the result of law, and absolute; and where from the condition of the court no modification can be annexed. It was insisted that an appeal, when taken within the time and in the mode prescribed by the acts of congress of September 24, 1789 (1 Stat. 85, § 23), and March 3, 1803 (2 Stat. 244, § 2), will operate under and by virtue of those acts to continue the injunction. But it is quite clear that these provisions deal only with the writ of execution founded upon the decree rendered, and which is awarded by it, and have no application to the provisional writ of injunction, or other incidental proceedings in the progress of the cause."

This case is clearly an authority directly

upon the point, that when a bill is dismissed without qualification, it is out of court; that all incidents go with it, and the jurisdiction is gone. The very object of the motion was to obtain a modification of the dismissal so as to avoid this result. Mr. Justice Nelson also observes that the point was a subject of consideration in the supreme court, and that no doubt was entertained of it by any of the judges. It may, therefore, be regarded as the decision of the supreme court, and as settling the question. The conclusion is so obvious that the counsel in the last case, in their motion proceeded upon the theory, that unless they could procure a modified decree to preserve the jurisdiction, the jurisdiction would be gone. The two cases cited are the only ones brought to our notice, or that we have been able to find, directly deciding the point. Occasions for continuing injunctions pending an appeal must have been frequent and pressing; and the fact that no instance can be found in practice of their continuance where the bill has been dismissed absolutely, is the best evidence that court and bar have regarded the jurisdiction as gone.

Counsel for the Richmond Company relied upon two cases,—Goddard v. Ordway, 94 U. S. 672, and Hart v. Mayor, etc., of Albany, 3 Paige, 381,—neither of which touches the point in this case. In the former case, there was a receiver; and at the time the supersedeas was perfected, the receiver had twenty-five thousand dollars of the fund in his hands, which required an order of the court to enable him to pay it over to the defendant in pursuance of the decree; which order the court was asked to make. The supreme court say: "Such an order would be in aid of the execution of the decree, which has been stayed, and consequently beyond the power of the court to make until the appeal is disposed of. While the court below may make the necessary orders to preserve the fund, and direct its receiver to that extent, it cannot place the money beyond the control of any decree that may be made here, for that would defeat its jurisdiction." There the fund was in court, in its custody and control. But in this case. there is nothing to stay, except the collection of the costs. The court has no custody of the subject-matter. There is no fund in court, or under its control. In the case cited from Paige, the master out of court, upon an ex parte application, had granted a preliminary injunction restraining the defendant from destroying and removing his building. Upon the coming in of the answer, the defendant moved, on bill and answer, to dissolve the preliminary injunction, which motion was granted. An appeal was taken from the order dissolving the injunction. There was no dismissal of the bill, no final decree in the case. The appeal was from the interlocutory order. The case still remained in court, and the chancellor had full authority to make

any other order that the exigencies of the case demanded. In this condition of things, upon application, and upon terms, he made a new order restraining for a brief time the destruction of the property in controversy. He did not continue the former injunction, but as he says in terms, exercised a new and original jurisdiction in making the new order; that is not this case. Here the bill is dismissed absolutely, and the case is wholly out of court. There is no suit pending in which any order can be made. It follows that the motion in the suit in equity must be denied.

In the action at law, this court never had jurisdiction to issue an injunction. And it was for this reason that the bill in equity was filed. The court never had the custody of the subject-matter. The supersedeas undoubtedly stays the issue of a writ of restitution and execution for costs. But none has been issued or asked for. The Eureka Company are doing nothing whatever by authority, or under, or in pursuance of, the judgment, or of any process issued thereon. It is doing nothing more than it was doing before these actions were commenced, except that it has extended its drifts further into the mine, so as to work the body of the ore which it was seeking by these same means to obtain, prior to the institution of any of these suits. It is simply doing what it was restrained from doing by the injunction issued on the cross-bill while it was in force. It is proceeding under the same claim and authority now, as it was before, nothing more, nothing less. The court has made no order in this case other than to enter judgment for the possession and costs in favor of the Eureka Company, and it can make none.

Undoubtedly, if the court had inadvertently, or otherwise, issued an execution after the perfection of the supersedeas, and the plaintiff had been thus wrongfully put in possession, or was about to be so put in possession under the writ, it could by virtue of its control over its process, have stayed the execution of the writ, or have restored the possession improperly given, had the writ been executed. But nothing of the kind has occurred. Nothing in the custody or control of the court in this action is in any manner affected by the acts of the Eureka Company, and the court is without power to interfere. If there is any power to issue the restraining order asked, it lies with the appellate court. Whether that tribunal can make the order, must be determined by itself. Under its rules, however, upon a proper showing, it can afford a speedy remedy by advancing the cause and bringing it to an early hearing. If deemed a proper case, this would perhaps be the better remedy. While on the one hand the working of the mine might consume the subject-matter of litigation, and leave little for the Richmond Company in case of ultimate success; on the other, to restrain the working of the mine adjudged

to belong to the Eureka Company for the period of three years, the time suggested as likely to be required for the disposition of the case, would be scarcely less calamitous should the decision be affirmed. To those familiar with the subject, it requires no argument to show that it would be extremely disastrous to allow an open mine, with all its vast extent of shafts, drifts, winzes, etc., to fill with water, fall in and become destroyed, and its machinery, hoisting works, mill and mine itself, to be disused for so long a period. Section 1182 of the Statutes of Nevada, also relied on by the Richmond Company, relates to proceedings in a case pending, over which the court still has control. But this case is ended and gone beyond the reach of this court. The statutory provision, therefore, has no application.

It follows that the motions must be denied, and the order issued restraining the Eureka Company from working pending the motion, vacated and dissolved, and it is so ordered.