SWEENEY et al. v. HANLEY.

HANLEY v. SWEENEY et al.

EMPIRE STATE–IDAHO MINING & DEVELOPING CO. v. HANLEY.

(Circuit Court of Appeals, Ninth Circuit. November 9, 1903.)

Nos. 848, 933, 934.

1. PRELIMINARY INJUNCTION—DISSOLUTION BY FINAL DECREE.

A temporary injunction ceases to be effective on the entry of a final decree in the cause.

2. MINES—RIGHT OF MAJORITY OWNER TO WORK—IDAHO STATUTE.

Under the statute of Idaho, as construed by its Supreme Court, the owner of the majority interest in mining property is entitled to mine the same, accounting to the owner of the minority interest for his share of the net proceeds, in the absence of any showing of fraud or wrongdoing.

3. SAME—WRONGFUL EXCLUSION OF MINORITY OWNER—MEASURE OF LIABILITY FOR ORE APPROPRIATED BY CO-TENANT.

Although the majority owner in a mine is authorized by statute to work the same, such authority does not extend to the right to exclude the minority owner from access to the property; and where the majority owner does so exclude its co-tenant, and is working the mine and retaining the entire proceeds under a claim of sole ownership through a deed obtained by fraud, it is liable on an accounting for the gross value at the mine of its co-tenant's share of the ore produced, without any deduction for the cost of mining; and the fact that the minority owner, on the commencement of a suit to recover his interest in the mine and ore, did not apply for a preliminary injunction, does not estop him to claim his share of such gross value of the ore thereafter taken out by defendant so long as he is so wrongfully excluded, the fact of the commencement of the suit being notice to defendant that it continued to exclude complainant at its peril.

4. SAME—PARTIES LIABLE FOR TRESPASS.

Where, in a suit against a corporation and its individual grantors to cancel a deed to an interest in mining property for fraud, and to recover such interest and complainant's share of the ore taken out, it appears that such ore was taken and appropriated solely by the corporation defendant, complainant is entitled to judgment for the value of his interest therein against such defendant alone.

Appeals from the Circuit Court of the United States for the Northern Division of the District of Idaho.

¶ 1. See Injunction, vol. 27, Cent. Dig. § 392.

126 F.—7

No. 848.

W. B. Heyburn, for appellants.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

No. 933.

W. B. Heyburn and F. T. Post, for appellants.
John R. McBride and M. A. Folsom, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges. Motion for injunction: Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

No. 934.

John R. McBride and M. A. Folsom, for appellant.
W. B. Heyburn and F. T. Post, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge.   In the case of Hanley v. Sweeny et al., 109 Fed. 712, 48 C. C. A. 612, it was here adjudged, among other things, that the deed from Hanley to Sweeney and Clark, the predecessors in interest of the Empire State-Idaho Mining & Developing Company, for his undivided one-eighth interest in the Skookum mine, was never in fact delivered, but was gotten possession of by Clark and Sweeney without consideration, and in fraud of Hanley's rights, and that it was accordingly void and of no effect.   After the cause was returned to the court below for further proceedings not inconsistent with the opinion of this court, the defendants in the suit, who were engaged in extracting ore from beneath the claim in question and appropriating the same to their own use, in hostility to any and all claim thereto on the part of Hanley, subsequently continued to do so under the claim that the ore so found beneath the surface of the Skookum claim was a part of a vein having its apex in the San Carlos mining claim that belonged to them, and that it constituted no part of the Skookum mine.   The court thereupon, on the application of Hanley, stopped them from so doing by its writ of injunction, to continue until the further order of the court, and committed to a master the taking of an accounting of the antecedent working of the ground by the defendants to the suit.   Thereupon the latter brought the appeal numbered 848 from the order granting that injunction.

The circumstances of the case were such as, in our judgment, rendered proper the granting of the temporary injunction.   The order appealed from in the case numbered 848 is accordingly affirmed, with costs.

After the taking of the accounting above mentioned, and after a hearing of the objections made thereto by the respective parties, the court below rendered the following final decree in the cause:

"This cause came on to be further heard at this term, and was argued by counsel; and thereupon, upon consideration thereof, and in pursuance of the mandate of the United States Circuit Court of Appeals in this cause, it was ordered, adjudged, and decreed as follows:

"First. That the conveyance made by Kennedy J. Hanley to Charles Sweeny and F. Lewis Clark on April 30, 1898, of a one-eighth interest in the Skookum patented mine and mining claim and the ore therein contained, which said mine is situated in Yreka Mining District, Shoshone county, Idaho, is hereby canceled, set aside, and declared to be null and void from its date.

"Second. That the defendants, Charles Sweeny, F. Lewis Clark, and the Empire State-Idaho Mining & Developing Company have, and each of them has, no interest or estate whatever in or to an undivided one-eighth interest in and to the said Skookum mine and mining claim and the ores therein contained. That the complainant, Kennedy J. Hanley, since April 30, 1898, has been and now is the owner of an undivided one-eighth interest in and to said Skookum mine and mining claim and the ores therein contained, and said interest is hereby quieted in him.

"Third. That complainant, Kennedy J. Hanley, have and recover from defendant Empire State-Idaho Mining & Developing Company the sum of one hundred seventy-five thousand eight hundred sixty-seven and two-hundredths dollars ($175.867.02), comprising the following items: (1) Thirty-eight thousand five hundred seventy-seven and forty-one hundredths dollars ($38,577.41), being one-eighth of the proceeds (less freight and treatment and rebate) of said ores taken from the Skookum by defendants between May 15, 1898, and March 18, 1899. (2) One hundred twenty-three thousand six hundred seventy-five and thirty-four hundredths dollars ($123,675.34), being one-eighth of the net proceeds, after deducting freight, treatment, mining, hoisting, milling, and working expenses, of all of said ores taken from said Skookum mine between March 15, 1899, and February 15, 1902. (3) Seven thousand nine hundred ninety-three and twenty-seven hundredths ($7,993.27), being interest on the amounts mentioned in subdivisions one and two, to wit, one hundred and sixty-two thousand two hundred and fifty-two and $74/100$ dollars ($162,-252.74), from February 15, 1902, until the date of this decree. (4) Five thousand six hundred and twenty-one dollars, being one-eighth of the net proceeds, after deducting freight and treatment, mining, milling, hoisting, and working expenses, including charge for use of improvements, of all said ores taken from said Skookum mine between February 15, 1902, and May 18, 1902.

"It is further ordered and decreed that interest shall be allowed on the amount of this decree from date of entry at the rate of seven (7) per cent. per annum, and that complainant have and recover his costs, including amount paid the master.

"It is further ordered that the First National Bank of Wallace, Idaho, pay to Kennedy J. Hanley all moneys (amounting to $5,523.42) deposited in said bank to the credit of this court in this cause, pursuant to the order of the court made February 11, 1902, and when paid said amount shall be a credit upon the judgment as aforesaid.

"Dated this 17th day of November, 1902.      Jas. H. Beatty, Judge."

It will be noticed that by this final decree the injunction theretofore granted was not continued in force. Upon the entry of the final decree the temporary injunction came to an end. Gardner v. Gardner, 87 N. Y. 14; Eureka Con. Min. Co. v. Richmond Min. Co., 5 Sawy. 121, Fed. Cas. No. 4,549; Ency. of Plead. & Prac. vol. 10, 1029; Buffington v. Harvey, 95 U. S. 99, 24 L. Ed. 381.

A motion was subsequently made on behalf of the defendants to the suit for an order dissolving the preliminary injunction, which motion the court below denied. Whether or not it was the real reason for that action of the court, it is a sufficient reason therefor that no such injunction was then in force, it having come to an end by the entry of the final decree in the cause making no provision for any injunction. From that final decree both parties appealed to this court, which cross-appeals are presently to be considered and disposed of.

The final decree established in Hanley an undivided one-eighth interest in the mine and mining claim in controversy; the Empire State-Idaho Mining & Developing Company, as the successor in interest of Sweeney and Clark, owning the majority thereof, and with no injunction against its working the property. Some time after the entry of the final decree mentioned, to wit, in the month of March, 1903, that company again commenced mining under the surface of the Skookum claim, having taken the advice of its counsel to the effect that it had that right, and, under like advice, set apart and deposited in bank one-eighth of the net proceeds thereof for the protection of Hanley as well as itself. That course has been since pursued, until now and here this court is asked, without any showing of any fraud in the mining operations of the company, or any unminerlike working of the ground, to enjoin the company from mining further, and thus tie the property up.

We are of the opinion that under the provisions of the statute of Idaho, as construed by the Supreme Court of that state, which construction is binding upon the federal courts in respect to property situated in that state, as is that here involved, the owner of the majority interest in such property is entitled to mine and control its operations, in the absence of any showing of fraud or wrongdoing—accounting, of course, to the owner for his proportion of the net proceeds. Hawkins v. Spokane Hydraulic M. Co. (Idaho) 28 Pac. 433; Id., 33 Pac. 40.

The application here made for an injunction is therefore denied, with costs to the defendants.

The appeal of the Empire State-Idaho Mining & Developing Company from the final decree above mentioned is mainly based upon the claim that the ore found under the surface of the Skookum mining claim, and which has been and is being mined by it, is a part of a vein having its apex within the San Carlos mining claim owned by the company, and constitutes no part of the Skookum mine or mining claim; and on the accounting above mentioned, and again before the trial court when that accounting was brought before it, it sought to show that such was the fact. But the court below, as did the master, held, and properly held, that that matter was foreclosed by the prior decisions of this court in the cause. The learned counsel for the Empire State-Idaho Mining & Developing Company again seek to raise the point that, under the pleadings in the original action of Hanley v. Sweeny, supra, no such question could have been adjudicated; but in reply to the same suggestion made in the mandamus case of Hanley v. Beatty, District Judge, 117 Fed. 59, 54 C. C. A. 445, this court said:

"Section 4538 of the Revised Statutes of Idaho provides that 'an action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claim.' Under this statute the Circuit Court had jurisdiction, upon the pleadings, to determine the entire controversy between the parties respecting the Skookum mine and the ores therein contained. Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52; Reynolds v. Bank, 112 U. S. 405, 5 Sup. Ct. 213, 28 L. Ed. 733. It was the duty of the defendants to inter-

pose all the defenses they had to the action, and, having failed to do so, the defendant the Empire State-Idaho Mining & Developing Company is debarred from interposing a defense which they had at that time by a new action. Burton v. Huma (C. C.) 37 Fed. 738. In Dowell v. Applegate, 152 U. S. 327, 345, 14 Sup. Ct. 611, 38 L. Ed. 463, the rule in such a case is stated to be: 'A judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to any ground which might have been presented.'

"Testimony on behalf of the defendants is referred to as tending to show that the apex of the vein containing the ore in the Skookum mine was outside the surface location of that claim, and it is contended that, because counsel for the complainant objected to this testimony as irrelevant and immaterial, he must be deemed as having objected because that issue was not involved in the case. No such inference can be drawn from the proceedings. It was not claimed that this testimony tended to show that the apex of the vein was outside the Skookum claim and in some other claim owned by the defendants, and, unless that was the purpose of the testimony, and it tended to establish that fact, it was clearly irrelevant and immaterial. The defendants were required to prove whatever adverse title they had, and, unless the testimony tended to establish such a title, it was subject to complainant's objection. The testimony is, however, in the record, and it is not claimed now that, as it appears in the record, it tends in any way to establish such a defense. Moreover, no ruling of the court below excluding such testimony was brought here on the appeal, and, if any inference is to be drawn from this feature of the proceedings, it is that the defendants did not consider the question as to the apex of the Skookum vein as being an issue in the case."

That decision has become the law of the case, and the question is not now open to further consideration.

It is further objected, on the appeal of the Empire State-Idaho Mining & Developing Company from the final decree of the court below, that under no circumstances is Hanley entitled to recover anything more than one-eighth of the net proceeds of the ore mined by it from the Skookum claim, while, on the appeal of Hanley from the same decree, he contends that the court below erred in restricting his recovery to net proceeds in the respect hereinafter shown, and also in refusing to extend the judgment given him to Sweeney and Clark personally.

The suit was commenced March 18, 1899. The Empire State-Idaho Mining & Developing Company had then been mining the ore in question since May 15, 1898, and appropriating the whole thereof to its own use. It continued to do so until February 15, 1902, on which day the court below denied an injunction and receiver theretofore applied for by Hanley against the company, but ordered the latter "to deposit in the First National Bank of Wallace, Idaho, in the name and to the credit of the United States Circuit Court in and for the District of Idaho, in the cause entitled 'Kennedy J. Hanley, Complainant, vs. Charles Sweeney et al., Defendants, No. 848,' one-sixteenth of the gross proceeds of all ore taken from underneath the surface of the Skookum mining claim described in the complaint herein, such deposit to be made subject to the order of this court in this cause. By the term 'gross proceeds' is meant the entire proceeds of the ore mined, less the cost of sampling, freight, and treatment charges." The company continued to mine the ore in question, and to deposit one-sixteenth of the gross proceeds thereof, as required

by the order just quoted, until May 18, 1902, when the injunction herein first spoken of was granted.

The report of the master was to. the effect that Hanley was entitled to one-eighth of the proceeds (less freight and treatment and rebate) of the ores taken from the Skookum mine from May 15, 1898, to February 15, 1902, and to one-eighth of the net proceeds, "after deducting freight, treatment, mining, hoisting, milling, and working expenses," with certain interest, etc., from February 15, 1902, to May 18, 1902. The court below confirmed the report of the master, in so far as it covered the period of operations extending to the commencement of the suit, and from February 15, 1902 (the date the deposit of one-sixteenth of the gross proceeds was required to be made), to May 18, 1902 (when the injunction was granted), but held that from the time of the commencement of the suit until the making of the order denying Hanley's application for an injunction and a receiver, and requiring the deposit mentioned, Hanley was only entitled to one-eighth of the net proceeds, saying, in its opinion in respect to the mining of the ore in question during that period:

"When this action was commenced, the complainant knew defendant was extracting the ores in which he claimed an interest; he so alleged, and the developments at the trial show he was advised. When it is made to appear with reasonable certainty that wasteful trespass is being made upon property, courts will take some prudent means of protecting the rights of all the interested parties. Such, certainly, has been the practice of this court. True, not always by the expensive management of a receiver or the destructive injunction, but at least by some temporary sequestration of proceeds. The question is, was the complainant, knowing that defendant was extracting the ore he claimed, justified in quietly looking on, and then long after, not only claiming the ores, but their value as enhanced through the labor and expenditures of a defendant. Or, did he not, by his silence, acquiesce in the trespass? The presumption is that, had he asked protection, such action would have followed that the rights of both parties would have been conserved. Were it shown that he, knowing that defendant was taking his property, avoided asking the court's protection with the intention of permitting defendant to extract these ores, and of then demanding their gross value, such a demand would not be tolerated by any court of equity. Now, whether complainant stood silent from such motive, or from oversight or misconception of his rights; the result is the same to the defendant. Admit that the defendant was committing a wrong, this does not justify another, of either omission or commission, by complainant. Equity does not permit the wrong of one to inure to the benefit of another who also does wrong. The punitive rule can be invoked only when the defendant is clearly in the wrong and the complainant is as clearly without fault. My opinion is that complainant was so derelict that he cannot claim a benefit thereby. The cases cited in which punitive damages were allowed do not show that the plaintiffs had any knowledge of the trespass while it was going on, or that they in any way acquiesced in it."

The case shows that from the beginning of the mining of the ore in controversy to at least the time of the decision of this court on May 6, 1901, in the case of Hanley v. Sweeny et al., 109 Fed. 712, 48 C. C. A. 612, the defendants to the suit claimed Hanley's interest in the mine in question by virtue of the deed here adjudged never to have been delivered, but to have been fraudulently gotten possession of by Sweeney and Clark, during all of which period they unlawfully and fraudulently excluded Hanley from the mine. It is true, as we have above decided, that under the statutes of Idaho, as construed by

the Supreme Court of that state, those holding the majority interest in a mine or mining claim in that state have the right to mine and control the operations of the entire mine, if done honestly and properly, but not to the exclusion of their co-owner, who has the clear legal and equitable right to access to any and every part of the property, and to its proper inspection, to the end that he may see that his rights are respected and protected, and that he may receive his just proportion of the net proceeds. Where, however, as in this case, during a long portion of the time the ore in controversy is being mined, the owner of an undivided minority interest is excluded from the premises, and his ore, as well as that of the majority owners, extracted and disposed of, the act cannot, in our opinion, but be fairly regarded as a willful and unlawful trespass, in which cases the law very justly holds the wrongdoer responsible for the gross value of the property unlawfully taken. Wooden-Ware Co. v. United States, 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230, in which case, though an action at law, the court quoted with approval the following statement of Lord Hatherley in the House of Lords, in the case of Livingstone v. Rawyards Coal Co., 5 App. Cas. 25, to the effect that the same doctrine is applicable to cases in equity:

"There is no doubt," said he, "that if a man furtively, and in bad faith, robs his neighbor of his property, and because it is underground is probably for some little time not detected, the court of equity in this country will struggle, or, I would rather say, will assert its authority, to punish the fraud by fixing the person with the value of the whole of the property which he has so furtively taken, and making him no allowance in respect of what he has so done, as would have been justly made to him if the parties had been working by agreement." But "when once we arrive at the fact that an inadvertence has been the cause of the misfortune, then the simple course is to make every just allowance for outlay on the part of the person who has so acquired the property, and to give back to the owner, so far as is possible under the circumstances of the case, the full value of that which cannot be restored to him in specie."

See, also, Benson Mining Co. v. Alta Mining Co., 145 U. S. 428, 12 Sup. Ct. 877, 36 L. Ed. 762; Pine River Logging Co. v. United States, 22 Sup. Ct. 920, 46 L. Ed. 1164; Foster v. Weaver, 118 Pa. 42, 12 Atl. 313, 4 Am. St. Rep. 573; Sears v. Sellew, 28 Iowa, 501; Bainbridge on Mines (1st American Ed.) p. 448; Guckenheimer v. Angevine, 81 N. Y. 394.

We are unable to perceive any force in the suggestion that, where the excluded tenant in common knows of the willful trespass and does not apply for a preliminary injunction on commencing suit, he should be allowed only the net proceeds appertaining to his interest. It may well be responded that the bringing of suit is notice to the wrongdoer that he excludes his co-owner at his peril. Moreover, the various records in the present suit negative the suggestion that Hanley was in any respect derelict in the prosecution of his rights in respect to his ownership of an undivided one-eighth of the mine in question; on the contrary, they show that he was vigorous in the assertion of them, while the defendants to the suit were active in their denial of any interest therein on his part, and in his absolute and entire exclusion from the premises. Nor do we think the complainant can be deprived of the proportion of the proceeds of the ore in ques-

tion properly appertaining to his interest therein, because of this allegation contained in his bill:

> "Your orator further shows that the ores contained in said Skookum mine are of such value that there has been taken out of said ore body then disclosed in said ground, up to the present time, ore to the value of not less than one hundred and fifty thousand dollars ($150,000) net, over and above the cost of mining, treating, extracting, and marketing the same, of which your orator is entitled to the share represented by his interests in said Skookum mine theretofore set forth."

This is not an averment to the effect that the complainant is only "entitled to a portion of the net proceeds." In his prayer he expressly asked, among other things, "that the defendants be held to account for your orator's share of the proceeds of said Skookum mine taken therefrom by the said defendants." We think that there is nothing in the bill to preclude the complainant's recovery of the amounts shown by the accounting to be equitably his due.

For the reasons stated, we are of opinion that that portion of the third subdivision of the final decree of the court below, reading:

> "That complainant, Kennedy J. Hanley, have and recover from defendant, Empire State-Idaho Mining & Developing Company, the sum of one hundred seventy-five thousand eight hundred sixty-seven and two-hundredths dollars ($175,867.02), comprising the following items: (1) Thirty-eight thousand five hundred seventy-seven and forty-one hundredths ($38,577.41), being one-eighth of the proceeds (less freight and treatment and rebate) of said ores taken from the Skookum by defendants between May 15, 1898, and March 18, 1899. (2) One hundred twenty-three thousand six hundred seventy-five and thirty-four hundredths dollars ($123,675.34), being one-eighth of the net proceeds, after deducting freight, treatment, mining, hoisting, milling, and working expenses, of all of said ores taken from said Skookum mine between March 18, 1899, and February 15, 1902. (3) Seven thousand nine hundred ninety-three and twenty-seven hundredths dollars ($7,993.27), being interest on the amounts mentioned in subdivisions one and two, to wit, one hundred and sixty-two thousand two hundred and fifty-two and 74/100 dollars ($162,252.74), from February 15, 1902, until the date of this decree. (4) Five thousand six hundred and twenty-one dollars, being one-eighth of the net proceeds, after deducting freight and treatment, mining, milling, hoisting, and working expenses, including charge for use of improvements, of all said ores taken from said Skookum mine between February 15, 1902, and May 18, 1902"—

Must be so modified as to award the complainant, Hanley, judgment for one-eighth of the gross value at the mine of all ore extracted by the Empire State-Idaho Mining & Developing Company therefrom up to the time the defendants to the suit ceased to exclude him from the mine and to give him or his representatives free access thereto and inspection thereof, and thereafter for one-eighth of the net value of all ore so mined by the defendant company from the mine or mining claim in question, together with legal interest on all moneys so accruing to Hanley prior to February 15, 1902, from that date (the appellant Hanley being precluded by his assignment of errors from claiming any interest prior thereto), and with legal interest on all moneys subsequently accruing to him from the dates when they respectively accrued.

As the case shows that all of the mining complained of was done by the defendant Empire State-Idaho Mining & Developing Company, and that none of the ore was extracted or appropriated by the

defendants Sweeney and Hanley individually, the personal judgment asked for against them cannot be given.

The cause is remanded to the court below, with directions to modify the final decree as above indicated, taking, if necessary, further proof as to the time when the defendants to the suit ceased to exclude the complainant, Hanley, from the mine in question, and gave or offered to him or his representatives free access thereto and free inspection thereof, and such other proof as may be needed, and, when so modified, it will stand affirmed; the appellant, Hanley, to recover costs on this appeal.