(July 18, 1905.)

## CHEMUNG MINING COMPANY v. HANLEY.
### [81 Pac. 619.]

Order or Decision Denying Motion to Appoint a Receiver—Appealable—Power of Supreme Court to Appoint Receiver—Application for Appointment of Receiver—Denied.

1. Under the provisions of section 9, article 5 of the constitution of Idaho, the order or decision of a district court or judge denying a motion for the appointment of a receiver is an appealable order or decision.

2. Under the provisions of said section of the constitution, this court has the power to appoint a receiver to act pending the litigation.

3. Under the facts as presented by the record on this application for the appointment of a receiver, *held*, not sufficient to warrant such appointment and the application is denied.

(Syllabus by the court.)

APPLICATION in an action by the Chemung Mining Company against Kennedy J. Hanley for the appointment of receiver pending the litigation. Denied.

George Turner, John P. Gray and Albert Allen, for Plaintiff, file no brief.

W. E. Borah and M. A. Folsom, for Defendant, file no brief.

SULLIVAN, J.—This is an original application to this court for an order appointing a receiver to collect and receive the proceeds, amounting to over $300,000, of a certain judgment and decree rendered in the circuit court of the United States for the district of Idaho, northern division, on the tenth day of May, 1904, in a certain action wherein Kennedy J. Hanley was complainant and Charles Sweeney, F. Lewis Clark and the Empire State-Idaho Mining and Developing Company were the defendants, and for an order directing and requiring said Hanley to assign and transfer said judgment and decree and all moneys adjudged to be paid thereby to said receiver, and enjoining and restraining said Kennedy J. Hanley, his agents and attorneys, from in any manner assigning or transferring said judgment except to such receiver, and from in any manner collecting or receiving said judgment and from in any manner interfering with such receiver in the collection thereof. This application was heard upon the affidavit of George Turner, Esq., and upon the transcript on appeal in this action. The complaint in this action was filed December 3, 1901. The action was brought by the plaintiff, the Chemung Mining Company, against the defendant, Kennedy J. Hanley, to recover from said Hanley a one-eighth interest in and to the Skookum mining claim, situated in the Yreka mining district, Shoshone county. We shall hereafter refer to the Chemung Mining Company as the Chemung company and to the Empire State-Idaho Mining and Development Company as the "Empire company."

It is alleged, among other things, in the complaint, that said Hanley procured the title to said one-eighth interest in said mining claim as trustee or agent for the plaintiff corpora-

tion on or about August 1, 1897, and has since that time fraudulently and wrongfully refused to convey the same to complainant, which allegations are denied by the defendant, and defendant averred that he purchased said one-eighth interest for and on his own behalf. The ownership of that one-eighth interest is the main issue in this action. It appears from the record that the Chemung company was organized by the said Sweeney & Clark under the laws of the state of Washington on the fifth day of August, 1896, and for the purpose, among other things, of buying, selling, acquiring and operating mines and mining claims within the United States; that its capital stock consisted of five hundred thousand shares of the par value of $5 each; that Charles Sweeney, F. Lewis Clark and the defendant, Kennedy J. Hanley, were the owners of all of the stock of that corporation except a few shares held by employees of said Sweeney & Clark in order to qualify them as directors of said corporation. The defendant, Kennedy J. Hanley, owned one hundred thousand shares of said stock.

*In limine,* we are met with two questions. The first is as to whether an order of a district court refusing to appoint a receiver pending the litigation is an appealable order. Under the provisions of section 9, article 5 of our state constitution, this court has jurisdiction to review, upon appeal, any decision of the district court or the judges thereof. An order granting or refusing a motion for the appointment of a receiver is a decision, and such decision is appealable; therefore the order of the district court denying the appointment of a receiver in this case is an appealable order.

The second question is: Has this court power to appoint a receiver in this case? Under the provisions of section 9 of our constitution, *supra,* the supreme court has original jurisdiction to issue writs of *mandamus* and other writs therein named, and also is given authority to issue all writs necessary or proper to the complete exercise of its appellate jurisdiction.

In *Pacific Ey. Co. v. Ketchum,* 95 U. S. 2, 24 L. ed. 347, the supreme court of the United States held that that court

had power under section 716 of the United States Revised Statutes, to appoint a receiver. The provisions of that section after specifying some writs which the court may issue, provides that it may have power to issue all writs not specially provided for by statute, which may be necessary for the exercise of its jurisdiction. The provisions of that statute are substantially the same as the provisions of said section 9, article 5 of our constitution. (See, also, High on Receivers, 3d ed., sec. 41; *Goddard v. Ordway,* 94 U. S. 672, 24 L. ed. 237; 20 Am. & Eng. Ency. of Law, 62.) This court has the authority to appoint a receiver in the exercise of its appellate jurisdiction.

The Empire company was a corporation organized and existing under the laws of the state of New York, and was organized and controlled by said Sweeney & Clark. Sweeney was the manager of the said corporation from the date of its organization in the latter part of 1897 or early part of 1898, up to and including a part of the year 1900, and was the controlling spirit of the Chemung company during the time that the litigation was going on between Hanley and Sweeney and Clark, and the Chemung company and the Empire company, which litigation was carried on in the state and United States courts, as shown by the cases of *People ex rel. Chemung Min. Co. v. Cunningham,* 6 Idaho, 113, 53 Pac. 451, *Hanley v. Sweeney et al.,* 109 Fed. 713, 48 C. C. A. 613, *Hanley v. Beatty, U. S. Dist. Judge,* 117 Fed. 59, 54 C. C. A. 445, *Sweeney et al. v. Hanley,* 126 Fed. 97, 61 C. C. A. 153, and the *Empire State-Idaho Min. etc. Co. v. Hanley,* 198 U. S. 292, 25 Sup. Ct. Rep. 691, 49 L. ed. 1056.

On September 19, 1898, the Chemung company executed and delivered to the Empire company its certain deed conveying to the Empire company all of the property and assets of the Chemung company of whatsoever kind or nature and wherever situated. Said deed contains the following, among other, provisions:

"This indenture made this nineteenth day of September, in the year of our Lord, one thousand eight hundred and

ninety-eight, by and between the Chemung Mining Company, a corporation organized and existing under the laws of the state of Washington, and having its principal place of business in the city and county of Spokane, state of Washington, the party of the first part, and the Empire State-Idaho Mining and Developing Company, a corporation organized and existing under the laws of the state of New York, and having its principal place of business in the city and county of New York, state of New York, the party of the second part, witnesseth:

''Whereas, the stockholders of said party of the first part, at a special meeting of said stockholders, duly called for that purpose, duly adopted the following resolutions: 'Resolved: That the action of the board of trustees of Chemung Mining Company, accepting the offer of the Empire State-Idaho Mining and Developing Company to purchase the whole of the property and assets of the Chemung Mining Company of whatsoever kind or nature and wherever situated and particularly the following described lode mining claims: the 'Jersey Fraction,' 'Lilly May,' 'Carriboo,' 'Goodluck,' and 'Butte Consolidated' lode mining claims, designated by the surveyor general as lot No. 1220, embracing a portion of section twelve (12) in township forty-eight (48) north, of range two (2) east, Boise meridian, and of the unsurveyed public domain, in the Yreka mining district, Shoshone county, state of Idaho, containing eighty-nine acres and eight hundred and one thousandths of an acre of land, more or less, for a more particular description of the boundaries of which said lode mining claims reference is hereby made to the record of the patent therefor, issued by the government of the United States of America, and recorded in the office of the recorder of the general land office in volume 294 at 'pages 397 to 402, inclusive; also all of the right, title and interest of the Chemung Mining Company, the same being an undivided one-third interest of, in and to the Skookum lode mining claim.

''4. Also all of the other assets and property of the said

party of the first part of whatever kind or nature and wherever situated.''

While a specific description of said one-third interest in Skookum is given in said deed, after that follows the general grant of ''all other assets and property of the said party of the first part of whatever kind or nature and wherever situated.'' This was an enlargement on the specific description, and included all property and assets of the Chemung company of every nature and kind wherever situated. It is clear to me from the resolution of said board as found in the deed, and from the other provisions found in the deed, that the Chemung company intended to sell, and did sell and convey, to the Empire company all the property of whatever kind and nature that it owned. The record also shows that at the time said deed was executed, Sweeney & Clark were in fact the Chemung Mining Company and believed at that time that the Chemung company owned only a one-third interest in said claim, and that it was the intention to convey all of the interest, whatever it might be, in said Skookum claim, be it one-third thereof or more. When we come to consider the language used in said deed, we do not think more appropriate language could have been selected to show the intention of the grantor to convey to the grantee all of the property of whatsoever kind and nature that it owned anywhere or place, to the Empire company, and if the Chemung company was the equitable owner of a one-eighth interest in said Skookum claim at the time said deed was made, that interest was conveyed to the Empire company by said deed.

In *Idaho Min. Co. v. Union Co.*, 5 Idaho, 119, 47 Pac. 99, the description in the deed was as follows: ''Also all the machinery, engines, boilers, hereby conveying to said Jeff Clark all the property, real, personal and mixed, belonging to said William C. Schultz, and located in said county of Bingham, Idaho,'' and that was held to convey a mining claim owned by said Schultz and not named in said deed. In that case it was contended that because the deed named the ''Robinson'' claim and did not name the Austin claim, that the

Austin claim was not conveyed. But the court held that the general clause in said deed conveyed whatever interest the grantor had in the Austin claim. (See, also, *Frey v. Clifford,* 44 Cal. 335; *Lick v. O'Donald,* 3 Cal. 59, 58 Am. Dec. 383.)

In *Pettigrew v. Dobbellar,* 63 Cal. 363, the court held that the following description, to wit: "All lands and real estate belonging to the said party of the first part wherever the same may be situated," passes the title to all property which the grantor had.

*Clifton Co. v. Randall,* 82 Iowa, 89, 47 N. W. 905, passes upon the sufficiency of a description in a conveyance similar to the one at bar, and in the course of the decision the court said: "The South Park Company conveyed to plaintiff by deed, wherein the description of the property is given by lots, blocks, or government divisions, etc., followed by these words: 'Also together with all other lands that may not have been heretofore described belonging to the South Park Company.' Appellant contends that certain lots are expressly mentioned; that that excludes all others, and as lot 22 is not mentioned, it did not pass by the deed. Such a construction of this deed would be against the manifest intent of the grantor. The evident purpose was to convey all the land owned by the grantor, . . . . to convey any omissions and express the purpose of the parties the recital quoted was added of what further was conveyed." We therefore hold that if the Chemung company was the owner of said one-eighth interest in the Skookum mine at the time said deed was executed, it conveyed that interest to the said Empire company.

The case of *Hanley v. Sweeney et al.,* 109 Fed. 712, 48 C. C. A. 612, was a suit in equity brought by said Hanley as complainant to obtain a decree annulling two certain deeds made to the defendants Sweeney & Clark. It was held in that case that the deed from Hanley to Sweeney & Clark of said one-eighth interest in the Skookum mine was obtained fraudulently; and in the suit of *Hanley v. Beatty, District Judge,* 117 Fed. 59, 54 C. C. A. 445, which was a proceeding for a writ of mandate to said judge to compel him to pro-

ceed and enforce a certain judgment in the circuit court of the United States for the district of Idaho, northern division, wherein said Kennedy J. Hanley was complainant and said Sweeney & Clark, F. Lewis Clark and the said Empire State-Idaho Mining and Developing Company, a corporation, were defendants, which was a suit in equity to quiet the title of said Hanley to the said one-eighth interest in the Skookum mining claim. It was held in the said case of *Hanley v. Beatty* that the action of *Hanley v. Sweeney, Clark and the Empire Company* was an action to quiet title, and for other relief, and that the court had in that suit jurisdiction to determine the entire controversy between the parties representing the mine and the ore therein, and that it was the duty of the defendants to set up all defenses that they had to complainant's claim thereto; and in the course of the opinion the court said: "It was the duty of the defendants to interpose all the defenses they had to the action, and having failed to do so, the defendant, the Empire Mining Company, is debarred from interposing a defense which they had at that time by a new action," and that "a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to any ground which might have been presented." While it is true that the Empire company is not claiming anything in this action, we refer to the above to show that the title to said one-eighth interest as between the Empire company and Sweeney & Clark has been quieted and settled in Hanley. (See, also, *Empire State-Idaho Mining etc. Co. et al. v. Hanley,* 136 Fed. 99.) That case was appealed to the supreme court of the United States, 198 U. S. 292, 25 Sup. Ct. Rep. 691, 49 L. ed. 1056, and the appeal was dismissed for want of jurisdiction.

The record shows that Sweeney & Clark were the owners of substantially all the stock and controlled the Chemung Mining Company. They also organized and were the promoters of the Empire company, and that Sweeney was the manager of said company until sometime in 1900; that on the nineteenth day of September, 1898, said Chemung com-

pany passed a resolution by its board of trustees whereby it accepted the offer of the Empire company for the purchase of all the property and assets of the former company of whatsoever kind or nature and wherever situated; that on that day the said deed above referred to conveying all of the property of the Chemung company to the Empire company was executed by the said Charles Sweeney as president of said company; that the consideration paid for all of the property conveyed by said deed was $25,000; that said sum was used in paying some debts due from the Chemung company, and the balance of nearly $20,000 was distributed among the stockholders, Sweeney & Clark, and thereafter, and up to the time of the bringing this suit, nothing further is heard of the Chemung company. It apparently lay dormant from the time it sold all its property and distributed the consideration received therefor until this suit was brought, which was on December 3, 1901. Clark claims to have sold his interest in the Chemung company to Sweeney; in fact, it appears from the record that Sweeney & Clark were the controlling spirits and the owners of all of the stock of the Chemung company, except several shares, and that Sweeney was the manager and controlling spirit of the Empire company; that he knew all of the facts in regard to the said one-eighth interest of the Chemung mining claim claimed by Hanley, and his own affidavit, and that of Clark made at the time when they apparently had no reason for departing from the truth, was to the effect that they recognized Hanley as the undisputed owner of said one-eighth interest. In an affidavit made by said Sweeney on the fifth day of November, 1898, he swore, among other things, as follows: "That on the thirtieth day of April, 1898, the said Hanley was the owner of an undivided one-eighth interest in the Skookum mining claim in the Yreka mining district, Shoshone county, state of Idaho; . . . . that on said thirtieth day of April, 1898, the said Hanley claimed to be also the owner of the said undivided one-third interest in said mining claim; . . . . and that for several days prior to the thirtieth day of April, 1898, negotiations had been going on between said Hanley and this affi-

ant and said Clark, which said negotiations were finally brought to a point by an offer on the part of the affiant and said Clark to purchase from said Hanley his undivided one-eighth interest in the said Skookum lode mining claim, and also his one hundred thousand shares of the capital stock.''

F. Lewis Clark in his affidavit of December 31, 1898, swore, among other things, as follows: ''On Mr. Sweeney's return to Spokane, after consulting with him, we talked with Mr. Hanley on several occasions concerning his interests.  He owned one hundred thousand shares of stock in the Chemung Mining Company and a one-eighth interest in the Skookum mining claim, and he claimed to own the one-third interest of the said Skookum claim in dispute as aforesaid, but which we claimed belonged to the Chemung Mining Company.  This one-third interest was then in litigation as aforesaid.  I asked Hanley at one time to put a price on his Chemung stock, another price on the one-eighth interest, and another price on the one-third interest he claimed to own, and he said if he sold at all he had his idea of what he ought to get. . . . . My desire was to get him to set a price on the Chemung stock, another price on the one-eighth interest, and another price on the one-third interest so we could investigate and determine whether the Skookum was a desirable piece of ground or not, and if so, to choose the interest we wanted to buy.  Hanley said he would not do this, but he would sell it all together.  We, Mr. Sweeney and I, finally decided that the best thing for us was to get this whole interest, and obtain an interview with him for the purpose of making a trade on this basis.  The conversation resulted in this kind of an understanding—that Hanley should, put a price on what he owned beyond dispute, that is, the Chemung stock and the one-eighth interest in the Skookum claim, and he would also put a price on the interest in litigation as aforesaid.  We did not care much what price he put on the interest in dispute, because we were satisfied he had no chance of winning that interest. . . . . The terms of the contract for the purchase of said Chemung stock and the one-eighth interest in the Skookum were $2,000 down, $18,000 on or before July 1,

1898, and an option on the one-third interest in the Skookum in litigation; there was no cash payment, but we had until August 1, 1898, in which to exercise our option.''

Sweeney and Clark in their said affidavits swore that said one-eighth interest was the undisputed property of Hanley. Substantially the same statement is made in the answer sworn to by Sweeney in the case of *Hanley v. Sweeney et al.*, 109 Fed. *supra*, and in their testimony given on August 22, 1899, and in the sworn answer of the defendants in the case of *Hanley v. Chemung Min. Co.*, in the district court (case afterward dismissed), said Sweeney and Clark testified and swore that the said one-eighth interest in said Skookum mining claim was the undisputed property of Hanley, and he was treated and recognized by said Sweeney and Clark and the Chemung Mining Company during the entire period from October, 1897, to December 3, 1901, as the owner of said one-eighth interest, and it further appears that during said period Hanley and Sweeney and Clark and the Chemung company were not friendly and were litigating in the courts a greater portion of said time.

It is true that the plaintiffs in this proceeding have produced the affidavits of Kearns and Cunningham in support of their contention, to wit, that Hanley purchased said one-eighth interest as agent and trustee for the Chemung company, but as we view it, the record shows that said Sweeney & Clark were really the Chemung company and the Empire company, and controlled and managed their affairs; that at the very time they should have spoken and claimed said one-eighth interest for the Chemung company, they made affidavits and otherwise swore that Hanley was the undisputed owner of said one-eighth interest, and these facts have great weight with us in determining this matter—greater weight than said affidavits of Kearns and Cunningham. And beyond that Sweeney was acting for the Chemung company, and that company is estopped from now claiming said one-eighth interest in the Skookum mining claim. It is true that said Sweeney and Clark have made recent affidavits in which they undertake to explain their testimony and sworn statements

theretofore made to the effect that Hanley was the undisputed owner of said one-eighth interest, and in our view of the matter said explanations "fail to explain," and indicate to us that the claim to said one-eighth interest for the Chemung company was an afterthought, and put forth to further retard Hanley in procuring the results of his long-contested suits in the United States courts, wherein and whereby those courts have held that Hanley was the owner of said one-eighth interest in the Skookum claim, and quieted his title thereto as against the Empire company and the said Sweeney & Clark, and awarded him some $400,000, which the Empire company, under the management of said Sweeney, had extracted from said one-eighth interest in said Skookum claim, belonging to said Hanley.

This application is presented to this court on the transcript on appeal from the order of the district judge refusing to appoint a receiver to take charge of the proceeds of the judgment of said United States court. We therefore have before us all of the evidence presented to the district judge on the application to him for the appointment of such receiver.

We hold that the showing is not sufficient to warrant the appointment of a receiver, and the application is denied. Costs of this proceeding awarded to defendant.

Stockslager, C. J., concurs.

AILSHIE, J., Concurring.—I agree with my associates that an order appointing or refusing to appoint a receiver is appealable, and that under the provisions of section 9, article 5 of the constitution, this court has the authority, in the exercise of its appellate jurisdiction, to appoint a receiver pending an appeal. Upon the showing made by this application, I do not think we would be justified in appointing a receiver in this case. Nor, after an examination of the entire record as the same was presented to the district judge, would we be justified in saying that the trial judge abused his discretion in refusing to appoint a receiver. For these reasons, I concur in denying the motion. I think the discussion in the majority opinion as to the construction to be

given to the deed of September 19, 1898, from the Chemung Mining Company to the Empire State-Idaho Mining Company gratuitous, and given undue prominence and consideration under this application. That question is here raised collaterally, and by a stranger to that contract who insists that the grantor parted with property to which neither the grantee therein named nor its successor in interest is making any claim. Indeed, it is certainly a debatable question as to whether or not such a grant will pass title to a mere unascertained and undetermined equity where the entire legal and record title rests in a third party, and the grantor makes no direct or specific reference to such equity. On this, I express no view. Neither can I agree with my brothers to the extent to which they go in applying the principles of estoppel to the Chemung company. In fact, I think that question should be left for determination upon the trial of the case on its merits. This doctrine of estoppel is getting to be too frequently an aggressive interloper, stalking around like a giant in courts of equity, instead of the modest defender of honest and fair dealing it was born and bred.